THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ERNEST ZURN, Appellant.

County Court, Broome County, January 15, 1954.

*Theodore H. Cohn* and *Peter A. Daniels* for appellant.

*Robert E. Fischer, District Attorney* (*Frank J. Ondrusek* of counsel), for respondent.

BRINK, J. This is an appeal from a judgment of conviction against the above-named defendant-appellant, in the City Court of Binghamton for violation of subdivision 1 of section 56 of the Vehicle and Traffic Law (an infraction), rendered in the City Court of Binghamton on the 8th day of July, 1953, after a trial

before Hon. WALTER J. RELIHAN, City Court Judge. Upon his conviction, the defendant was sentenced to pay a fine of $25 or be confined to the Broome County jail for a period of twenty-five days. The fine was paid. The information upon which the defendant was tried charged a violation of subdivision 1 of section 56 of the Vehicle and Traffic Law, in that he drove an automobile west on Hawley Street at a speed that endangered the lives of pedestrians crossing at this intersection.

Subdivision 1 of section 56 of the Vehicle and Traffic Law of the State of New York provides as follows: " No person shall operate a motor vehicle or a motor cycle upon a public highway at such a speed as to endanger the life, limb or property of any person, nor at a rate of speed greater than will permit such person to bring the vehicle to a stop without injury to another or his property." It has been held that a violation of this statute is an infraction. (*Matter of McNellis* v. *Fletcher,* 197 Misc. 80.)

The proof on the trial established that the defendant, a taxi-cab driver, as he was operating a taxicab in a westerly direction on Hawley Street, in the city of Binghamton, approaching the intersection of Hawley and Washington Streets, was suddenly blinded by the setting sun on the 3d day of July, 1953, at about 7:25 P.M. While he was so blinded, he made a right-hand turn into Washington Street, which at this point is a one-way street restricted to north bound traffic. A City of Binghamton police officer, named Francis T. Burke, who is the complainant in this case, was walking in an easterly direction across Washington Street on the crosswalk area, on the north side of Hawley Street. As the complainant was approximately two thirds of the way across the street, his attention was attracted to the approaching taxicab, either by the outcry of another pedestrian who was following him, or by his own vision, so that at the moment of contact he was able to avoid injury by placing his hand on the car and by pushing himself or jumping clear of the automobile. The taxicab, which was traveling at that time at a rate of speed estimated between fifteen and eighteen miles an hour, apparently did not slacken speed until after the officer hollered, at which time the driver of the taxicab admitted that the sun was shining in his eyes and he could not see where he was going. Traffic at this intersection was controlled by a traffic light which throughout this incident signalled a green light for traffic on Hawley Street and a red light for traffic on Washington Street. Consequently, the defendant taxi driver and the complainant pedestrian both had the green light.

The question presented here is somewhat novel in the light of the lack of judicial precedent for construction of this statute which was last amended in 1946.

The counsel for the defendant-appellant argues that there can be no violation of this statute where there has been no property damage or personal injury and furthermore, that a speed of fifteen miles per hour cannot be considered as dangerous to life and limb within the meaning and intent of this statute.

A careful examination of the language of the statute and consideration of its purpose does not indicate that personal injury or property damage are necessary elements of the offense. The statute provides in the alternative, such a speed as to endanger life, limb or property or a speed greater than to permit a person to stop without injury to another or his property. Injury or property damage may be evidentiary factors. The words " endanger the life, limb " imply death or injury which is threatened, but not effected. The purpose of the statute is to regulate the conduct of the operator of the motor vehicle as to speed and not to punish him for the consequences of his carelessness.

The remaining question is whether under any circumstances, a speed of fifteen miles per hour can be considered as a violation of this statute. The limitation of speed of motor vehicles is defined by the Vehicle and Traffic Law and by Municipal Ordinances. The purpose of this statute is to cover a situation where a motor vehicle operator may not be exceeding the speed limit, but is driving at a dangerous rate of speed under existing conditions. This is apparent from the report of the New York Governor's Conference on Highway and Traffic Safety, page 22, rendered as part of New York State's Traffic Safety Program of 1946. Included in that report is the following statement: " Your Committee therefore recommends the adoption of an overall speed limit of 50 miles per hour, such speed limit to be absolute, not prima facie. It further recommends that the law relating to speed limits include a clause declaring that a speed greater than that which is reasonable and prudent under the conditions is a violation."

The statute places no minimum limitation on the rate of speed that may constitute a violation. Any court can take judicial notice of the fact that an automobile proceeding at a rate of speed between fifteen and eighteen miles per hour can cause death or serious personal injury. In the opinion of this court, the question as to whether a rate of speed is dangerous must be determined as a question of fact in each particular case under

the conditions that prevail. It is conceded that a rate of speed of fifteen miles per hour on our city streets, even approaching an intersection, could not be considered dangerous except under unusual circumstances. However, we find that the defendant driver of the taxicab was confronted with an unusual situation. He was blinded by the sun and he knew or should have known that pedestrians crossing the intersection on the Hawley Street crosswalk had the right of way (Vehicle and Traffic Law, § 85, subd. 1). He also knew that at the particular hour of day it was probable that pedestrians would be crossing this street, which was a busy downtown intersection. He also knew that he had been temporarily blinded and could not see pedestrians if they were to loom in front of him.

It might be argued that the driver's conduct might constitute reckless driving in that his act in operating the car at any speed while he was blinded by the sun constituted recklessness. However, this does not necessarily follow, as an automobile may be operated with use of low gear and a brake, at a speed of less than five miles an hour. When this defendant-appellant was blinded by the sun, he could have stopped, placed his car in low gear and crawled around the corner at such a slow rate of speed that he would not have endangered the safety of any pedestrian who might have been walking across the street. In the opinion of this court, the City Judge was justified in determining that a rate of speed of fifteen to eighteen miles an hour through this intersection under such conditions was dangerous to life and limb. In fact, the complainant might well have been killed or injured, had it not been for his agility. Under any circumstances, the question of dangerous speed under existing conditions is a question of fact just as reckless disregard of the rights of others on a highway is a question of fact in reckless driving cases.

In the opinion of this court, the evidence before the trial court was sufficient to support a finding that the defendant-appellant's speed was dangerous to life and limb and greater than that which would permit him to bring his vehicle to a stop without injury to another, under the existing conditions.

The judgment of conviction should be affirmed. An order may be submitted accordingly.